UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ANTHONY PAYNE,                    )
                                  )
         Petitioner,              )
                                  )
    vs.                           )      No. 4:07CV01908 AGF
                                  )
TROY STEELE,                      )
                                  )
         Respondent.              )

# MEMORANDUM AND ORDER

This matter is before the Court on the pro se petition of Missouri state prisoner, Anthony Payne, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, habeas relief shall be denied.

# BACKGROUND

On March 22, 1995, Payne's mother and sister were robbed at gunpoint. On May 24, 1995, Payne and his uncle, Henry Petty, believing Nathaniel Massey to have been the perpetrator, drove to the Bluemeyer Housing Project in St. Louis, Missouri, to confront him. They found him on a street by the project, argued with him for a few minutes, drove off, and returned not long afterwards, with a gun tucked into the back waistband of Petty's pants. The argument resumed on the street, and Payne drew the gun out of the back of Petty's pants and shot Massey 11 times. Massey died from these injuries. Marnece Sampa, who happened to be on the street at the time videotaping her friends,

caught the murder on tape.  When the police arrived at the scene, no gun was found on or near Massey's body.  Sampa gave her tape to the police.

Payne was indicted on one count of first-degree murder and one count of armed criminal action.  His defense at trial was that the state failed to meet its burden of proof and mistaken identity.  Sampa had testified that Payne was not in the videotape.  The jury convicted Payne on both counts and the court sentenced him to life imprisonment without the possibility of parole.  The court thereafter granted Payne's motion for post-conviction relief and set the case for new trial.  Meanwhile, Petty was tried separately and convicted for the same murder.

New counsel represented Payne at his second trial before the same judge.  At this trial, the defense theory was self-defense, with Payne testifying that he thought Massey had a gun and was going to shoot Payne and that Payne killed Massey in self-defense. Petty testified against Payne that Payne brought the gun to the scene and that he, Petty, later took it from him and put it in his waistband prior to the shooting.  Petty also testified that Massey did not have a gun and did not threaten Payne.  Sampa's videotape was played for the jury as it had been at Payne's first trial.  No defense witnesses were called to support Payne's claim of self-defense.  The jury convicted Payne on both counts and the court sentenced him to life without the possibility of parole on the murder count and a consecutive term of 15 years on the armed criminal action count.  The Missouri Court of Appeals affirmed the convictions and sentences on direct appeal, and also affirmed the trial court's denial of Payne's motion for post-conviction relief.

In the present action, Petitioner asserts that his constitutional rights were violated in the following ways:

> (1) the trial court erred in playing the videotape of the murder to the jury because there was an insufficient evidentiary foundation;
>
> (2) defense counsel was ineffective for failing to investigate and call three named witnesses to corroborate Petitioner's claim of self-defense;
>
> (3) defense counsel was ineffective for failing to call a certain individual who would have testified that Massey had a gun at the time of the murder;
>
> (4) the State used inconsistent theories of guilt in order to convict both Payne and Petty in their separate trials;
>
> (5) defense counsel was ineffective for failing to object to the State's use of the inconsistent theories at his trial and at Petty's trial;
>
> (6) the trial court erred under <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986), in allowing the prosecution to strike a certain African-American venireperson;
>
> (7) the trial court erred in barring the testimony of two defense witnesses;
>
> (8) the State failed to produce sufficient evidence to show deliberation in that the State did not rebut Payne's claim of self-defense; and
>
> (9) the cumulative effect of all of the above errors denied Payne a fair trial.

Respondent argues that habeas relief should be denied because Payne's third claim was procedurally defaulted, and the state courts' adjudication of all remaining claims was legally and factually reasonable.

## **DISCUSSION**

<u>Standard of Review</u>

Under the Antiterrorism and Effective Death Penalty Act of 1996,

[f]ederal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Harrington v. Richter, 131 S. Ct. 770, 785 (2011).

"For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. (quoting Williams, 529 U.S. at 410). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision." Id. at 786 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

**Admission of the Videotape**

Payne contends that the state trial court erred in admitting and playing Sampa's videotape of the murder to the jury, on the ground that there was an insufficient evidentiary foundation for the tape's admission into evidence. It is undisputed that at Petty's trial and Payne's first trial, Sampa testified that she had recently viewed the videotape and that it accurately depicted what she had recorded. At Payne's second trial, she testified for the State that she had recently watched the tape, and that a brief exchange

that she had with Petty at his car before the shooting, with each asking the other "What's up?", was missing from the middle of the tape, and that parts at the beginning, when she taped some of her friends who were on the street with her before Petty and Payne drove up, seemed out of order. After Sampa repeated this testimony out of the hearing of the jury, and acknowledged that this was the first time she had stated that the tape was missing something in the middle, the court denied defense counsel's motion to exclude the tape for lack of proper foundation. Upon examination, cross examination, and recross examination, Sampa again repeated the above testimony, acknowledging that the part of the tape depicting the murder was accurate. The court denied defense counsel's renewed motion to exclude the tape, and the tape of approximately 16 minutes, was played to the jury. (Resp. Ex. A-1 at 411-40.)[1] Two other witnesses for the State who witnessed the murder testified that the tape depicted it accurately. (Id. at 746, 813.)

On direct appeal, the Missouri Court of Appeals rejected Payne's argument that admission of the tape violated his right to a fair trial. The court found that the tape was

---

[1] The Court has viewed the tape. The first 6 and a half minutes show Sampa's friends having fun on the street. Petty and Payne's car then comes into view. Massey approaches the car when it is stopped in the middle of the street, along side Massey's parked car. Petty gets out of his car and is seen talking, over the top of his car, to Massey, who is leaning over talking with Payne, as Payne is sitting in the passenger seat. At 7 minutes and 45 seconds into the tape, Petty and Payne's car is seen again in the street in a different position, several feet away from Massey's car. Petty gets out and walks toward Massey who is standing by his own car. The two appear to be arguing. Payne is then seen calmly walking up behind Petty, pulling the gun out of Petty's back waistband, and shooting Massey. There is nothing suggesting that Massey had a gun. The remainder of the tape consists of mostly garbled scenes. While the tape is running, the police arrive at the scene and discuss the tape.

consistent with the testimony of the State's witnesses and Payne's own testimony. Further, to the extent that there were inaccuracies on the tape relating to secondary issues, Sampa was cross-examined on those issues. Finally, the court found that the crucial element of the tape, the depiction of the shooting, was acknowledged to be accurate. (Resp. Ex. F at 7-9).

"It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" such as evidentiary rulings. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Bounds v. Delo, 151 F.3d 1116, 1119 (8th Cir. 1998). A state-court evidentiary ruling becomes a constitutional violation only when it is "so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." Bounds, 151 F.3d at 1119 (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996)).

Upon review of the record, including the trial transcript and the videotape, the Court concludes that the state appellate court's decision was not based on a misapplication of federal law or on an unreasonable determination of the facts in light of the evidence presented at trial.

Payne's argument that the allegedly missing part of the tape is critical to corroborating his claim of self-defense has no merit. Payne seems to be suggesting that Sampa testified that something other than the "What's up?" exchange between her and Petty was missing from the tape. The Court believes that this is a misreading of the

record.  But even if it is not, the Court's decision remains the same as it was never disputed by anyone that the tape accurately reflected the murder.

**<u>Assistance of Counsel</u>**

Petitioner claims that defense counsel rendered ineffective assistance in failing to investigate and call three named witnesses to corroborate Petitioner's claim of self-defense, and in failing to call a certain individual (Verdell Hicks) who would have testified that Massey had a gun at the time of the murder.  The second claim of ineffective assistance is easily resolved under the doctrine of procedural default, as the claim was not raised in Payne's state court amended motion for post conviction relief.  Such claims may not be raised in a federal habeas petition, absent a showing of "cause and prejudice for the default or a miscarriage of justice."  <u>Interiano v. Dormire</u>, 471 F.3d 854, 856 (8th Cir. 2006); <u>Osborne v. Purkett</u>, 411 F.3d 911, 919-20 (8th Cir. 2005).  Payne makes no argument that the default should be excused, nor does the Court perceive any.

The first claim of ineffective assistance is before the Court on the merits.  The Sixth Amendment guarantees a criminal defendant the right to effective assistance of trial counsel.  <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984).  To succeed on a claim of ineffective assistance of trial counsel, a habeas petitioner must establish both "that counsel's representation fell below an objective standard of reasonableness," and that but for counsel's deficiency there is "a reasonable probability" that the result of the trial would have been different.  <u>Id.</u> at 688, 694.  Moreover, in the context of a § 2254

petition, a petitioner must do more than show that he would have satisfied Strickland's test if his claims were being analyzed in the first instance.

> The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 131 S. Ct. at 788 (citations omitted). "Strategic decisions by counsel are 'virtually unchallengeable' unless they are based on deficient investigation." Johnson v. Norris, 537 F.3d 840, 848 (8th Cir. 2008). "Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." Harrington, 131 S.Ct. at 789 (quoting Strickland, 466 U.S. at 689).

Here, following an evidentiary hearing at which defense counsel and Sampa testified, the motion court found that defense counsel reviewed all of the materials from Payne's first trial, conferred with Payne regularly, and employed a private investigator to canvass the neighborhood for other eyewitnesses. Either counsel or the investigator interviewed all the previously identified witnesses, and neither Payne nor anyone else identified Brown, Bush, or Smith as potential witnesses. The court found Sampa's testimony that she would have informed defense counsel that Brown, Bush, and Smith were eyewitnesses had defense counsel asked her, to be "wholly incredible," especially in light of her shifting stories at the two trials.

The motion court further found, in no uncertain terms, that Brown, Smith, and Bush had lied in their affidavits and depositions submitted to the court. Smith's and Bush's affidavits attested that they witnessed the shooting, saw that Massey had a gun, and saw a certain individual take the gun from the street. Ex. H at 54-59. Brown and Bush testified by deposition to the same effect, noting that the first person they told that they would testify in support of Payne's self-defense claim was Payne himself when they were incarcerated with Payne in the same prison after Payne's two trials. (Resp. Ex. I; Resp. Ex. H at 60-119.)

Based on these findings and a review of the videotape, the motion court concluded that Payne failed to show that defense counsel was deficient in his investigation or presentation of the case. (Resp. Ex. H-2 at 228-31.) The Missouri Court of Appeals credited the motion court's factual findings and held that defense counsel's investigation was reasonable. (Resp. Ex. M at 6.)

Upon this Court's review of the record, including the transcript of the post-conviction evidentiary hearing and associated affidavits and depositions, the Court concludes that the state courts' adjudication of this claim was not factually or legally unreasonable. The state courts applied the correct federal law regarding ineffective assistance of counsel, and the state court's factual findings are supported by the record. Issues of the credibility of witnesses at a post-conviction hearing are left to the state courts. Winfield v. Roper, 460 F.3d 1026, 1035 (8th Cir. 2006). In sum, both claims of ineffective assistance of counsel are without merit.

**Inconsistent Theories of Guilt**

Payne argues that his due process rights were violated because in Petty's trial for Massey's murder, the State maintained that Petty brought the gun to the scene of the crime, whereas in Payne's second trial, the State posited that Payne brought the gun to the scene and that Petty took it from him later at some point before the shooting. In Smith v. Groose, 205 F.3d 1045, 1052 (8th Cir. 2000), relied upon by Payne, the Eighth Circuit held that due process is violated when an inconsistency "exist[s] at the core of the prosecutor's cases against [two] defendants for the same crime." Id. at 1052. The Court explained as follows: "We do not hold that prosecutors must present precisely the same evidence and theories in trials for different defendants. Rather, we hold only that the use of inherently factually contradictory theories violates the principles of due process." Id. (granting habeas relief where there was contradictory evidence through which the state proved, in two trials, that the same murders occurred at two different times).

Here, the state courts concluded that the State's theories in Petty's and Payne's trials were not at their core factually inconsistent, as in both trials the State presented evidence that Payne knew the gun was in the car as he and Petty drove back to where Massey was, and that Petty put the gun in his waistband before the shooting from where Payne took it and shot Massey.[2] The Court agrees that this is a correct application of

---

[2] Although not material to this Court's ruling, the Court notes that the further details regarding the gun, and how it arrived at the scene, followed Petty's conviction and was a result of Petty's testimony at Payne's subsequent trial.

- 10 -

Eighth Circuit precedent. Thus, as the state courts held, any objection raised by defense counsel to the States' use of inconsistent theories would have been properly denied, and counsel was not ineffective for failing to make such an objection. See, e.g., Anderson v. Goeke, 44 F.3d 675, 680 (8th Cir. 1995) (holding that defense counsel's failure to object to testimony, the admission of which did not deprive petitioner of a fair trial, did not constitute ineffective assistance).

The Court notes the State's further argument that as there are no Supreme Court cases on this issue, Payne cannot obtain habeas relief on this claim. This Court agrees. As the Supreme Court explained in Wright v. Van Patten, 552 U.S. 120 (2008):

> Because our cases give no clear answer to the question presented, let alone one in [Petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law. Under the explicit terms of § 2254(d)(1), therefore, relief is unauthorized.

Id. at 126 (citation omitted).

**Batson Claim**

Petitioner argues that his constitutional rights were violated by the trial court's error in overruling his Batson challenge to the state's exclusion of an African-American venireperson. "Batson established that 'the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race.'" Stenhouse v. Hobbs, 631 F.3d 888, 891 (8th Cir. 2011) (quoting Batson, 476 U.S. at 89). The Supreme Court has adopted a three-part test to determine whether a peremptory strike violates the constitution. First, the petitioner must establish a prima facie case showing

that the prosecutor racially discriminated in exercising one or more peremptory challenge. Second, if the petitioner makes a prima facie showing, the State must offer a racially neutral explanation for the challenges. The State's explanation need not justify a challenge for cause, or be persuasive, or even plausible. Third, the trial court must decide whether the petitioner has established purposeful discrimination. Rice v. Collins, 546 U.S. 333, 338 (2006) (citing Purkett v. Elem, 514 U.S. 765, 767-68 (1995) (per curiam)).

"[A] federal habeas court can only grant [the] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the Batson challenge. State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.' § 2254(e)(1)." Rice, 546 U.S. at 338; see also Felkner v. Jackson, No. 10-797, 562 U.S. ___ (March 21, 2011) (per curiam).

Here, during voir dire, the State used one of its peremptory strikes to exclude an African-American venireperson. In response to Payne's Batson challenge, the non-racial reasons advanced by the State for the strike were the venireperson's failure to disclose a 1987 arrest for felony "possession" and the fact that her son had been prosecuted. Payne argued that the state did not strike a similarly-situated white venireperson who did not disclose that he was arrested for misdemeanor DWI in 1976. In reply, the State maintained that a 15-year-old felony arrest was more serious than a 26-year-old misdemeanor arrest, and also noted that it struck a white venireperson who

did not disclose arrests for felony first-degree assault and stealing. The trial court denied the Batson challenge.

The Missouri Court of Appeals affirmed this decision, stating that "the totality of the circumstances do not suggest that this case was particularly susceptible to discriminatory intent by the state," and that the prosecutor's stated reasons for the challenged strike were race neutral because the prosecutor struck a similarly-situated white venireperson. Payne argues that the prosecutor's decision not to strike the white venireperson who did not disclose a 26-year-old DWI arrest shows that the prosecutor's strike of Jones was racially motivated.

The Court concludes that the state trial court's decisions on this matter did not involve an unreasonable application of Batson, and were not based on an unreasonable determination of the facts in light of the voir dire proceedings. The court followed proper procedures, asking the prosecutor to present race-neutral reason for the challenged strike. When Payne offered an argument for rejecting the prosecutor's reason, the court addressed the argument. Payne failed to overcome with clear and convincing evidence the presumption of correctness afforded the trial court's Batson findings. The state appellate court also reasonably determined that there was good reason to distinguish between the venireperson who was struck and the white venireperson who was not. Thus, this ground for relief shall be denied. See Stenhouse, 631 F.3d at 892-93 (holding that the state courts reasonably rejected a Batson claim where "the similarly situated"

venirepersons posed by the defense were not really similarly situated); Cole v. Roper, 623 F.3d 1183, 1188 (8th Cir. 2010) (same).

**Exclusion of Evidence**

Petitioner claims that he was denied a fair trial as a result of the trial court sustaining the state's objection to the testimony of Michael Batchman and Lucreesha Batchman who would have testified that Massey attempted to sexually assault one of Payne's distant relatives "within the same period of time" as the robbery of Payne's mother and sister. This testimony, according to Payne, would have supported his self-defense theory because it showed that Massey was a threat to his family and that Massey had committed violent acts previously.

The Missouri Court of Appeals held that the trial court did not err in excluding this evidence. The court held that the alleged sexual attack without a weapon on a distant relative was not reasonably related to Massey threatening Payne's family with a gun and stealing their property, and too vague as to time to support Payne's claim that Massey was on a violent vendetta with Payne's family, posing an immediate threat to Payne. The court also noted "the abundance of evidence in the record which, if believed, would defeat [Payne's] self defense claim. . . . Returning to the location where [Massey] was defeats [Payne's] claim that he was afraid of [Massey]. Rather, [Payne's] actions appear more in the nature of retaliation than fear." (Resp. Ex. F at 12-13.)

"[T]he Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are

asserted to promote . . . ." Holmes v. South Carolina, 547 U.S. 319, 327 (2006); see also Guinn v. Kemna, 489 F.3d 351, 354 (8th Cir. 2007) (citing Chambers v. Mississippi, 410 U.S. 284 (1973)).

Here, the Court concludes that the omission of the evidence in question did not deprive Petitioner of his right to present a complete defense. See, e.g., Garcia v. Mathes, 474 F.3d 1014, 1018 (8th Cir. 2007) (noting that a trial court may, without violating the constitution, exclude defense evidence that is only marginally relevant) (citing Holmes, 547 U.S. at 326-27).

**Sufficiency of the Evidence**

Payne argues that the State failed to produce sufficient evidence to show deliberation in that the state did not rebut Payne's claim of self-defense. Deliberation is an element under Missouri law of first-degree murder. The due process clause prohibits the conviction of an accused "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). Under Missouri law, a person commits first-degree murder if he "knowingly causes the death of another person after deliberation upon the matter." Mo. Rev. Stat. § 565.020.1. Deliberation is defined as "cool reflection for any length of time no matter how brief." Id. § 565.002(3).

In order to prevail on a claim of self-defense under Missouri law, a defendant must show:

> (1) an absence of aggression or provocation on the part of the defender; (2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death; (3) a reasonable cause for the defender's belief in such necessity; and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and the need to take a life.

State v. Henderson, 311 S.W.3d 411, 414 (Mo. Ct. App. 2010). "Once the defendant has injected the issue of self-defense into the case, the burden shifts to the state to prove the absence of self-defense beyond a reasonable doubt." Id.

Constitutionally sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The scope of review of the state courts' determination of whether evidence was sufficient is "extremely limited." Garrison v. Burt, ___ F.3d ___, 2011 WL 781219, at *4 (8th Cir. March 8, 2011); see also Skillicorn v. Luebbers, 475 F.3d 965, 977 (8th Cir. 2007).

In concluding that there was sufficient evidence to defeat Payne's claim of self-defense and to find the elements of first-degree murder, the state appellate court determined that the jury could have reasonably inferred that Payne was not afraid of Massey from the evidence that Payne attempted to locate and confront him. The court held that fact that Payne returned to confront Massey again established that he did not take all possible steps to avoid a violent confrontation. Moreover, the jury "was able to observe [Massey] on the video calmly approach Petty and [Massey] as they argued,

remove the gun from Petty's pants, and fire upon victim." The jury could also have found the elements of first-degree murder, according to the appellate court, based upon the testimony that Massey was shot eleven times with many of the wounds entering his back. (Resp. Ex. F at 14.)

Upon review of the record, this Court concludes that the decision of the Missouri Court of Appeals that the evidence was sufficient to convict petitioner of first degree murder is not contrary to or an unreasonable application of clearly established federal law. The court's decision is consistent with the evidence produced at trial and with Missouri's first degree murder statute. See, e.g., State v. Shaw, 14 S.W.3d 77, 86 (Mo. Ct. App.1999) (holding that deliberation could be properly inferred where the victim sustained multiple wounds or repeated blows); Rousan v. Roper, 436 F.3d 951, 958 (8th Cir. 2006) (finding that petitioner's due process/insufficiency of the evidence claim was defeated by the Missouri Supreme Court's conclusion that a reasonable juror could have found deliberation in first degree murder case beyond a reasonable doubt); Shadwick v. Roper, No. 4:07-CV-720 (CEJ), 2010 WL 2232710, at *4 (E.D. Mo. June 1, 2010) (same).

## CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C.

§2254(d)(2). See <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 337 (2003) (standard for issuing a Certificate of Appealability) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Anthony Payne for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not issue in this case.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of March, 2011.